The next case on for argument is United States v. Schlisser. Good morning, Mr. Your Honor. Good morning, Your Honor. May I proceed? In determining whether Schlisser was deprived of his right to counsel at the time of the most critical juncture of a criminal case, that is, when being asked to incriminate himself and plead guilty, this Court, in counsel's view, need only ask itself one question. Had Schlisser persisted in his denial that he did not possess an intent to defraud at the time he obtained the investments, would the district court have . . . That's not how I read the record. He wasn't persistent. He was equivocal. The judge asked him about his intent, which she needed to get cleared up before she could enter a plea. He said he was. He said he had fraudulent intent, and at the end of the proceeding, the judge asked the parties whether there were any problems with going forward. Anything else anyone wanted to say? No one said anything. Judge Parker, the record shows that he was not equivocal. He allocated very clearly without saying anything about an intent to defraud. The judge then followed up for the purpose because he had mentioned nothing about it. In the first time the judge asked a question, he denied possessing such an intent. The judge asked him again. He again denied it. Then he asked to consult with counsel. He again denied it. It was only when the judge . . . He was able to consult with counsel. The first time he was able to consult, and when he consulted with counsel, he denied it. That's at 872. But the court was asking him questions, whether it was . . . You're not pleading. Now is the time to come clean. All right. Sorry. The question was, and did you know when you were soliciting money that you intended to use some of the proceeds for your personal use for tuition, etc.? Right. That's for your Appendix 43 is where I'm . . . Right. At Appendix 42, he's asked the question the first time, and it starts at 841. When you started taking out loans from other people and you promised that you were going to use the funds for your own personal use, did you make that promise knowing for a fact that you were going to use the money for your own personal use? Answer, no, I did not. There was no equivocation about that. The court follows up again and says, well, when did you change your mind? The defendant says, as time went by. As time went by under this court's decision in Countrywide, that's not enough. Did he ever move to withdraw his plea? He did not. Why not? Is that relevant to our situation? I don't believe it's relevant because this is not simply a Rule 11 issue. This is a denial of the right to counsel. It's a structural error. To the extent that the record tells us anything, I think it's significant that if you look at both the lawyer's statement at sentencing and the defendant's statement, they again repeat what the defendant had said originally before the court denied him access. He had the same counsel at sentencing as he did at the plea, right? He did. He did. I was not the counsel. In an ideal world, I think the attorney would have objected. I don't know how . . . I don't think criminal law is his first . . . Well, there was two counsel. There were two counsel. They did not object, but I don't think that's relevant to the question of whether there was a denial. It seems to me, following up on Judge Droney's question, that the logical next step would have been for the defendant to get with counsel and said, hey, I was railroaded into this, and then a motion would follow. In an ideal world, that would have been the next step. What he did is . . . It's less than an ideal world. It's sort of a normal world right out here, it seems to me. When he had new counsel, I don't know . . . I mean, reading through the record, I'm not sure how much counsel was aware of the issue in Countrywide, of whether you need to possess an intent at the time. I think the district court was very aware of it, and that's why she was asking the questions that she did. What she should have said is, Mr. Schlissel, if you can't admit possessing such an intent, I have problems accepting that plea. You better speak to your counsel. At that point, Schlissel would have conferred with counsel, and they would have made a decision. Do they want to go forward with this plea? Do you want to withdraw his plea now and go forward? Yes, he does. Yes, he does. Is it your position that the plea wasn't knowing and voluntary? Yes, it is, because it was not knowing and voluntary, because without the right of access to counsel, you cannot have a knowing and voluntary plea. Those are first principles. Well, she asked him about whether he had consulted with counsel, and he said yes, he had consulted with counsel. He had asked to consult with counsel, and during the course of the Rule 11 proceedings, he consulted with counsel. And at that point, he was asked the question, and he denied having such an intent. It was only when the court asked it for a third time and prohibited him from consulting with counsel that he changed his answer to yes. That's not the way this court should want to plead. How do you deal with Perry v. Leek? The Supreme Court said instructing the client not to speak to his lawyer during a 15-minute recess is okay. How is that different from this? Because I think the difference is, here we're talking about a guilty plea. We're talking about a Fifth Amendment right. I think what would be more . . . That was a trial. I know, but what would be more akin would be a police interrogation. The police asks the witness a question, and he says, listen, I have to talk to my lawyer. And the interrogator says, no, you've spoken to your lawyer already. All would agree you can't do that. That's what's happening here. That's why this is not . . . I think this case is far stronger than Perry or Getter's because this involves . . . This is the critical juncture. This is his waiver at a point in time where he's going to waive his Fifth Amendment right and plead guilty. Had the defendant at that point said, I'm not going ahead with the plea, there's no question he would have had the right to do that. So he has to have a right to counsel, and the court, by interfering with that right, it's deprived him of that right, and therefore the plea was not knowing the voluntary. And the government's only answer seems to be, you know, this is trivial, but precisely for the reasons that I just said, it's anything far from trivial. This is the critical juncture. And to the extent that it was only . . . You know, the government says, oh, this was only a look. The court said don't look at him. I think the government itself answered that because it said the purpose of the district courts preventing him from looking is because it didn't want him to consult with counsel. That's at their brief on page 24. Judge Caproni attempted to assure that Schlissel's words were his own rather than of his counsel. So it's clear that the purpose of why he was looking to his counsel was to see how to answer this question. If the court didn't want the attorney's words, but it could have said, listen, you could speak to counsel, but I don't want . . . I want your words, not counsel's words. But the right to consult with counsel was a clear right, and he was deprived of that, and therefore his plea should be vacated. Thank you, Mr. Yourowitz, and you've reserved two minutes for rebuttal. Ms. Hanft. May it please the court, my name is Elizabeth Hanft. I'm an assistant U.S. attorney in the Southern District of New York, and I represent the United States on this appeal. Were you counsel below? I was counsel below as well. Michael Schlissel pleaded guilty during an extensive and thorough plea allocution that thoroughly complied with Rule 11's requirements. During his guilty plea and throughout the course of his case, he received the effective assistance of two counsel that he had simultaneously retained. His guilty plea was clearly knowing, voluntary, and intelligent, and he was permitted to consult with counsel throughout the plea proceeding. What do you do with the incident that's sort of the focus of all of this, Appendix 43? Well, I think that incident, Your Honor, needs to be looked at in the context of the entire plea proceeding in which Mr. Schlissel was surrounded by two defense counsel. He confirmed at the beginning that he had discussed the case with his lawyers and the consequences of pleading guilty and that he was satisfied with their representation, and of course that he was advised at Appendix 30, the beginning of the proceeding, that he had the right to consult with his counsel throughout the proceeding, very clearly advised. The judge's words were, if you need an opportunity to talk to your attorney for any reason, just tell me that, and I will stop and give you an opportunity to talk to your attorney. He exercised that right? Indeed, he did exercise that right. It was clear to him that that right was not just a hypothetical right. At page A42, the court let him speak to his attorney. Mr. Schlissel said, could I speak to my attorney for one second? And the court said, sure. So Mr. Schlissel knew how to ask to speak to his attorney, and he knew that the court would grant that request. At no point did Mr. Schlissel ask to speak to his attorney and have that request denied. What about the voluntariness, though? The court's comments, when he hesitates about having the intent at the time he was soliciting the money, she says to him, don't look at him. You know whether that was in your head or not. You're pleading guilty. Now is the time to come clean. There is no reason to play games. Does that go to the voluntariness of the plea, though? I don't think it does to the extent . . . What's in the record is that the court, of course, made those statements, and I think what we can surmise is that the judge wanted an authentic allocution from Mr. Schlissel. But in any event, what is clear from the . . . Was she extracting from him the answer she wanted and needed? I don't believe so, Your Honor. The elements of the offense were read. I read the elements of the offense, which included an intent to defraud. Early in the proceeding, Mr. Schlissel continued with the proceeding. The judge asked the question that appellant now complains of having been confronted with, and the defendant was permitted to speak to his counsel after that question. He gave a counseled answer at the point that he's now complaining he did not have the assistance of counsel to confront. The judge repeated the question subsequent to Mr. Schlissel's having consulted with counsel. No new questions were asked after that interlude during which Mr. Schlissel was permitted to consult with his counsel. It's clear from the record, again, that there was no prohibition on Mr. Schlissel speaking to counsel. The judge never said, you cannot speak with your attorney, and indeed she let him speak with his attorney. The judge's stray remark, don't look at him, again, the record only reveals that that's what she said, the language Your Honors have used, but it is clear from the record and from the entire context of the guilty plea proceeding that Mr. Schlissel had the assistance of counsel, as the court has pointed out. Wasn't he perfectly entitled to look at his counsel? Why would she say that? I'm sorry, Your Honor? Wasn't he perfectly entitled to look at his counsel, or what's the judge saying you can't look at your lawyer? What's that all about? Your Honor, it could be for any number of reasons. I don't think we can guess. I think we can only read what is clear from the record. What's a proper reason for telling a defendant who's pleading guilty that he can't look at his lawyer? Once Mr. Schlissel had consulted with his lawyer, I think the judges often seek that defendants give an authentic allocution in their own words. Certainly, appellant's counsel can give . . . Do you think that in pursuit of what you term an authentic allocution, it's proper for a judge to tell a defendant he can't look at his lawyer? Your Honor, I think the question isn't whether it would be the best course of action or whether it's proper, but whether it meaningfully interfered with the appellant's right to his counsel, which it did not in this case. In any event, even if this were a restriction, I think as Judge Droney has pointed out, under the Triumph Capital and Getters and Perry standard, such an interference would be trivial in the context of the whole case. I didn't point it out. I just asked a question about it. Fair enough, Your Honor. Unless Your Honors have questions, I'll otherwise rest on our briefs. Anything you want to say about sentencing? Your Honor, just briefly, I think it's very clear from the record that the sentence was both procedurally and substantively reasonable. If the courts don't have questions, I'll rest. Thank you. Mr. Hurwitz? The government's position appears to be is you have the right once to consult with counsel, but after that, the court's free to deny it. A defendant has the right to consult as much as he wants, should have that right, to consult as much as he wants with counsel. The government says, oh, I read the elements and therefore intended the fraud was clear. A41 is the defendant's, the appellant's, initial allocation. As part of the plan, I executed an agreement not to use any of the money raised for personal expenses, although I did use some of the funds to invest, I used a significant amount to pay for personal expenses and other personal debts. I engaged in this conduct knowingly and intentionally. That allocation does not establish a wire fraud or a federal fraud on the countrywide. It's simply inadequate. The district court realized that, and that's why it followed up with that question. Did you possess an intent to defraud at the time? So, yes, the element was read, but the question is, what did it mean by an intent to defraud? The district court asked the question. Appellant answered, no, I didn't possess such an intent. The district court asked it again. Appellant said he didn't possess it. And then the court tells him, asks it a third time, and the court says, don't look at him. There is no reason to play games. That's nothing short of coercive. It's not games to consult with your counsel. This is a consultation of constitutional quality, and under Triumph, Getters, and every other precedent of this court and the Supreme Court, the appellant should have been permitted to consult with counsel. And the court recognized, repeated, this is structural error. There's a reason why. This is the most fundamental right that a person has. He was denied his Fifth and Sixth Amendment. He was flanked by two lawyers, and neither of them saw this incident as an interference with the right to consult counsel. I think if you ever . . . We weren't there. They were standing right there. I mean, if it's so basic and so obvious, it seems curious to me that neither of them said a word at any time. During the course of the proceedings, during the wrap-up, when the judge asks, is there any reason why I can't accept this plea, nobody said anything. Nobody moved to withdraw. Nobody raised it on . . . The only thing I would say is if you look at counsel . . . I know you were dealing with the record. No, but I think even the record, if you look at A71, counsel's statement at sentencing was he refers back to this incident. His statement was the fact of the matter is he couldn't testify to that. He couldn't swear under oath to that because it simply wasn't the case. When this investment began, Mr. Schlisser's intentions and his goals were to again make money for his investors and for himself. It was a business transaction. It wasn't until later on in the investment that Mr. Schlisser again admittedly began to use the money for his own purpose. Lots of frauds run that course. It doesn't strike me as anything unusual about that. It started off okay and then it went . . . No, but the point is, yes, the judge could have done a different allocution from him. They could have asked, Mr. Schlisser, are you prepared to admit that during the course of this fraud you made misrepresentations throughout the course of the fraud? The judge could have asked that and if Schlisser would have said yes, that maybe would have established fraud. But that question was never asked, so we don't know from the plea whether Schlisser was prepared to admit to that. He may have said, no, I'm not prepared to admit to that and walk away and say I'm going to withdraw this plea. So the question is, at the time of the allocution, was there a sufficient allocution? And the only thing that the court has is before he was denied his right to counsel, he denied having such an intent. Once he was denied the right to counsel, he admitted it. And that's improper. Thank you, Your Honor. Thank you. Thank you. Thank you both. We'll reserve decision.